[Docket Nos. 12, 13]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

IVAN D. FOSTER,

Plaintiff,

v.

HOLIDAY HOSPITALITY FRANCHISING, LLC AND SIX CONTINENTS HOTELS, INC., *et al.*,

Defendants.

Civil A. No. 24-10031 (RMB-MJS)

**OPINION**

**RENÉE MARIE BUMB, Chief United States District Judge:**

**THIS MATTER** comes before the Court upon the filing of an Amended Complaint and a letter requesting reconsideration of Plaintiff's motion for recusal by *pro se* Plaintiff Ivan D. Foster ("Plaintiff"). [Am. Compl. (Docket No. 12); Pl.'s Letter (Docket No. 13).]

## I. SCREENING FOR DISMISSAL

When a person files a complaint and is granted IFP status, 28 U.S.C. § 1915(e)(2)(B) requires courts to review the complaint and dismiss claims that: (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. Courts, however, must liberally construe pleadings that are filed *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The legal standard for dismissing a complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), is the same as that for dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## II. BACKGROUND

Plaintiff, a Black veteran, brings this action against Holiday Hospitality Franchising, LLC and Six Continents Hotels, Inc., d/b/a Intercontinental Hotels Group ("IHG"); SSN Voorhees, LLC d/b/a Holiday Inn Express ("HIE"); SSN Hotel Management, LLC ("SHM"); Peter Bhaidaswala ("Bhaidaswala"); and Catholic Charities Diocese of Camden ("CCDC"), asserting claims stemming from his allegedly unlawful eviction from HIE in Voorhees, New Jersey. [Am. Compl. at 1, 5–7.] Plaintiff alleges that SHM managed the hotel under the direction of Bhaidaswala, its co-founder and chief executive officer, and that IHG provided training and onboarding assistance to the hotel's general manager, Dan Sullivan ("Sullivan"). [*Id.* at 2, 6, 9, 11.] CCDC paid for Plaintiff's stay through the federally funded Supportive Services for Veterans Families ("SSVF") program. [*Id.* at 1–2, 8.]

Plaintiff alleges that he began residing at HIE on August 22, 2022, and that the CCDC paid his rent through January 16, 2023. [*Id.*] According to Plaintiff, Sullivan took orders from Bhaidaswala and Kelly Ryan, SHM's Regional Director of Operations. [*Id.* at 9.] Plaintiff alleges that HIE and CCDC conspired to wrongfully evict him after hotel personnel informed CCDC that they no longer wanted him to remain at the hotel because of something Plaintiff allegedly "said wrong to an inebriated worker of HIE." [*Id.* at 2–4, 9.] Specifically, Plaintiff alleges that CCDC stopped paying his rent and HIE stopped requesting payments from CCDC, thereby permitting HIE to pursue an eviction for nonpayment of rent. [*Id.* at 3–4, 19–20.] Plaintiff further alleges that CCDC denied his requests for a grievance review concerning the hotel's accusations against him and failed to reenroll him in the SSVF program despite representations that it would do so. [*Id.* at 4, 9–11.]

Plaintiff alleges that the eviction complaint falsely stated that he owed unpaid rent, had occupied the premises since December 13, 2022 under a written agreement, and did not have a tenancy subsidized under a federal or state or public housing program. [*Id.* at 8–9.] Plaintiff maintains that defendants sought rent for periods already covered by the CCDC's payments and did not notify him that subsequent rent was unpaid before seeking his eviction. [*Id.* at 12, 15.] Plaintiff further alleges that, after commencing the landlord-tenant action, HIE fabricated a lease bearing his forged signature and provided it to its attorney, who relied upon it in seeking a warrant of removal. [*Id.* at 10, 17.] According to Plaintiff, HIE, SHM, and Bhaidaswala pursued the eviction proceedings to retaliate against him, collect rent already paid by CCDC,

and cause him to become homeless. [*Id.* at 15–17.] Plaintiff alleges that the landlord-tenant action ultimately ended through a settlement agreement, that no judgment of eviction was entered against him, and that his agreed departure date was extended to July 7, 2023. [*Id.* at 4–5, 16.]

As in his original Complaint, Plaintiff alleges that Defendants' conduct was motivated, at least in part, by racial discrimination. [*Id.* at 5.] The Amended Complaint, however, contains additional factual allegations in support of this assertion. Plaintiff now alleges that a laundry-room manager told him, "Dan was right you black guys don't want to pay[,]" presumably referring to statements made by Sullivan. [*Id.* at 12.] He also alleges that the HIE Defendants did not permit him to enter into a written lease agreement during his tenancy, while renting rooms to white customers who wished to continue their stays, and that HIE employees denied him clean linens while providing them to white guests. [*Id.* at 21–22.] Plaintiff alleges that, but for his race, Defendants would not have interfered with his ability to contract for and enjoy his legally protected rights. [*Id.* at 22.]

Plaintiff also alleges that hotel employees harassed him and withheld mail containing an anticipated housing voucher after his departure, prolonging his homelessness. [*Id.* at 5, 21.] He alleges that he remained homeless until September 13, 2023, when another SSVF-funded organization obtained housing for him. [*Id.* at 5.] Plaintiff attributes emotional distress and physical injuries, including anxiety, depression, post-traumatic stress disorder, Bell's palsy, and memory loss, to Defendants' conduct. [*Id.* at 11, 13–14.]

Plaintiff renews his allegations under the Americans with Disabilities Act ("ADA"). [*Id.* at 20–21.] Plaintiff alleges that the hotel's ordinarily available luggage carts were unavailable when he returned in August 2023 to remove his belongings. [*Id.*] He alleges that Sullivan knew he had a herniated disc and after Plaintiff requested a reasonable accommodation, Sullivan provided only a small laundry cart, requiring additional trips and causing physical difficulty. [*Id.* at 6, 20–21.]

As to IHG, Plaintiff alleges that it failed to train its franchisees adequately to prevent harassment of guests and misuse of guest information for fraud, provided onboarding assistance to Sullivan during his first six months as a general manager, and stated that it would follow HIE's decision after Plaintiff reported the situation. [*Id.* at 11.] Plaintiff likewise alleges that SHM and Bhaidaswala failed to train and supervise hotel employees and that senior management authorized the alleged harassment and retaliation. [*Id.*]

Based upon these allegations, Plaintiff asserts claims under 42 U.S.C. § 1981(a); 42 U.S.C. § 1985(3); and the ADA; as well as common law state claims for intentional infliction of emotional distress ("IIED"), malicious use of process, and malicious abuse of process. [*Id.* at 12–22.]

## III. DISCUSSION

### A. <u>Plaintiff's Federal Law Claims</u>

#### 1. Section 1981(a)

Section 1981 "prohibits racial discrimination in the making and enforcement of contracts[.]" *Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001) (quoting 42

U.S.C. § 1981(a)). The statute defines the "mak[ing] and enforc[ing] [of] contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Thomas v. U-Haul Co.*, 2024 WL 4501566, at *2 (D.N.J. Oct. 15, 2024) (citing 42 U.S.C. § 1981(b)).

To bring a claim under § 1981, a Plaintiff must plausibly allege: (1) that he "belong[ ] to a racial minority; (2) an intent to discriminate on the basis of race by [Defendants]; and (3) discrimination concerning one or more of the activities enumerated in § 1981[,]" like making and enforcing contracts. *Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010) (citing *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 569 (3d Cir. 2002)). Section 1981 requires plaintiff to "initially plead ... that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

A Plaintiff is "not required to prove discriminatory intent at the motion to dismiss stage, rather [he] need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of [it]." *Bagic v. Univ. of Pittsburgh*, 773 F. App'x 84, 87 (3d Cir. 2019) (quotations omitted). A Plaintiff may show intent to discriminate through "direct evidence of discrimination from statements or actions by [defendants] suggesting racial animus." *Thomas*, 2024 WL 4501566, at *3 (quoting *Emery v. Uber Techs., Inc.*, 2021 WL 941879, at *4 (D.N.J. Mar. 12, 2021), *aff'd sub nom.*

*Uber Driver Partner Emery v. Uber Techs. Inc.*, 2022 WL 1196700 (3d Cir. Apr. 22, 2022) (internal citations omitted)).

Here, Plaintiff, a Black man, alleges that HIE, SHM, and Bhaidaswala "refus[ed] to continue to give … plaintiff clean linen when they were giving white citizens clean linen[.]" [Am. Compl. at 5, 22.] Plaintiff also alleges that the laundry room manager told him "Dan was right you black guys don't want to pay." [*Id.* at 12.] Taken together, these allegations raise a reasonable expectation that discovery will reveal that HIE, SHM, and Bhaidaswala intended to discriminate against Plaintiff on the basis of race, and that race was a but-for cause of the challenged treatment. *See Comcast Corp.*, 589 U.S. at 341.

As to the third element, Plaintiff alleges that CCDC and HIE entered into an agreement under which CCDC paid for his lodging, [Am. Compl. at 9], supporting an inference that Plaintiff was the intended beneficiary of that agreement. *See Broadway Maintenance Corp. v. Rutgers State Univ.*, 447 A.2d 906, 909 (N.J. 1982) ("the real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts; and the fact that such a benefit exists, or that the third party is named, is merely evidence of this intention"); *Nightingale & Assocs., LLC v. Dowd*, 2011 WL 2609555, at *2 (D.N.J. June 30, 2011). Because Section 1981 protects contractual performance, termination, and the enjoyment of contractual benefits, Plaintiff sufficiently identifies interference with protected activities concerning his lodging services and termination. Plaintiff also alleges that Sullivan took orders from SHM's regional director and Bhaidaswala, that Bhaidaswala

exercised final authority over hotel operations, and that SHM and Bhaidaswala authorized harassment and retaliation, sufficiently connecting them to the challenged conduct for purposes of screening. [Am. Compl. at 9–11.] Accordingly, Count VII may proceed against HIE, SHM, and Bhaidaswala pursuant to those theories.

Count IV, by contrast, focuses on HIE, SHM, and Bhaidaswala's alleged refusal to enter into a lease agreement after CCDC stopped paying for Plaintiff's rent. [*Id.* at 18–19.] Plaintiff generally asserts that Defendants refused to contract with him because of race but does not sufficiently describe a particular proposed transaction or the circumstances of its rejection. [Am. Compl. at 18–19; 21–22.] Count IV is therefore dismissed without prejudice insofar as it asserts a separate claim on the failure to offer a new written lease.

**2. Section 1985(3)**

Plaintiff claims that the Defendants conspired to deprive him of his right to a fair and impartial grievance review under the SSVF program and to facilitate his eviction from HIE because he is Black and a homeless veteran. [Am. Compl. at 19–20.]

Section 1985 is a conspiracy statute. It "provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979). To prove that defendants engaged in a conspiracy in violation of Section 1985, a plaintiff must establish (1) a conspiracy involving two or more persons; (2) that one or more of the conspirators performed or caused to be performed an overt act in furtherance of the conspiracy; and (3) that the

overt act injured the plaintiff in their person or property, or deprived the plaintiff of any right or privilege of a citizen of the United States. *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–103 (1971)). The plaintiff must also allege that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin*, 403 U.S. at 102. Section 1985(3) provides for causes of action against both state and private actors. *Novotny*, 442 U.S. at 371–72; *Barnes*, 252 F.3d at 162.

Here, even assuming Plaintiff sufficiently alleges coordinated action to facilitate his departure from the hotel, he has not plausibly alleged that the asserted conspiracy was motivated by a shared racially discriminatory purpose. Plaintiff alleges that hotel management informed CCDC that it no longer wanted him to remain, that CCDC thereafter stopped paying his rent, and that the hotel stopped requesting payment to facilitate an eviction for nonpayment. [Am. Compl. at 4, 9, 19.] The alleged racial remark and differential treatment of white guests support Plaintiff's Section 1981 claims against HIE, SHM, and Bhaidaswala but do not themselves establish that CCDC joined a racially motivated agreement. Plaintiff's assertions that Defendants conspired because he is Black and a homeless veteran, [Am. Compl. at 19–20], are conclusory, formulaic allegations insufficient to state a Section 1985(3) claim. *Twombly*, 550 U.S. at 555; *see also Alford v. Plumeri*, 2024 WL 2933194, at *8 (D.N.J. June 11, 2024) (dismissing Section 1985 claim where plaintiff "has not alleged the elements of such a claim in a non-conclusory manner."); *Baldwin v. Brown*, 2019 WL 1589968, at *11 (D.N.J. Apr. 12, 2019) (dismissing Section 1985 claims as conclusory

where complaint failed to adequately allege agreement by defendants to violate plaintiff's rights or facts suggesting discriminatory motive). Accordingly, Count V will be dismissed without prejudice.

**3. Americans with Disabilities Act**

Plaintiff's amended ADA claim fails for the same reasons identified in this Court's prior Opinion. [Docket No. 10 at 8–10.] Plaintiff alleges that, when he returned to HIE in August 2023 to remove his belongings, the ordinarily available luggage carts were missing, and Sullivan knew that Plaintiff suffered from a herniated disc. [Am. Compl. at 6, 20–21.] Plaintiff further alleges that, after he requested reasonable accommodation, Sullivan provided only a small laundry cart, requiring additional trips and causing physical difficulty. [*Id.*]

Although Plaintiff does not identify the applicable ADA provision, the Court liberally construes these allegations under Title III, which prohibits discrimination "on the basis of disability" by "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Even assuming that the alleged failure to provide adequate assistance could constitute disability discrimination, Plaintiff has failed to plead a basis for relief. First, Title III permits only injunctive relief, not money damages. *Abadi v. Marina Dist. Dev. Co., LLC*, 2024 WL 3984032, at *2 (3d Cir. Aug. 29, 2024); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 433 (3d Cir. 2003) ("Title III defendants cannot be liable for money damages."). Accordingly, Plaintiff's demand for $75,000 under the ADA, [Am. Compl. at 21], is dismissed with prejudice.

Second, it is well established that a "Title III plaintiff 'lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant.'" *Abadi*, 2024 WL 3984032, at *2 (quoting *Pryor*, 288 F.3d at 561). Plaintiff's allegations identify only one instance of possible disability discrimination against any of the Defendants, when Plaintiff was retrieving his belongings in August 2023, after which Plaintiff alleges another organization obtained housing for him in September 2023. [Am. Compl. at 5, 20–21.] Plaintiff does not allege an intention to return to HIE or other facts suggesting a possibility of continued disability discrimination there. Plaintiff's ADA claim is dismissed without prejudice to the extent it seeks injunctive relief.

**B. <u>Plaintiff's State Law Claims</u>**

As Plaintiff's Section 1981 claim survives, the Court exercises supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(a).

**1. Intentional Infliction of Emotional Distress**

Under New Jersey law, an IIED claim requires establishing: (1) extreme and outrageous conduct; (2) intent to commit both the act and cause emotional distress; (3) proximate cause; and (4) emotional distress so severe that no reasonable person could endure it. *Kanofsky v. Univ. of Med. & Dentistry of N.J.*, 50 F. App'x 546, 548 (3d Cir. 2002) (citing *Buckley v. Trenton Saving Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988)). As a threshold matter, it is for the Court to determine "whether a defendant's conduct

meets" the extreme and outrageous standard as a matter of law. *Jevremovic v. Courville*, 2025 WL 1911696, at *7 (D.N.J. July 11, 2025) (citations omitted).

While Plaintiff may not ultimately meet that high standard, he has alleged each element. Plaintiff claims hotel personnel withheld his mail containing an anticipated housing voucher to prolong his homelessness, interfered with the removal of Plaintiff's belongings knowing his physical limitations, and subjected him to continued harassment and discriminatory treatment. [Am. Compl. at 5–6, 11–12, 20–22.] Taken together, and accepted as true, Plaintiff's intentional infliction of emotional distress claim survives at this stage as to HIE, SHM, and Bhaidaswala.

### 2. Malicious Use of Process

To state a valid claim under malicious use of process, a plaintiff must show that: "(1) a [civil] action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause ...; and (4) the action was terminated favorably to plaintiff ...; [and (5)] the plaintiff has suffered a special grievance caused by the institution of the underlying civil claim." *Mutarambirwa v. Twp. of West Orange*, 2026 WL 113853, at *7 (D.N.J. Apr. 24, 2006) (citing *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022–1023 (2009)).

Plaintiff's allegation that the landlord-tenant action ended through a settlement does not establish favorable termination merely because no eviction judgment was entered, and that his agreed departure date was extended to July 7, 2023. [Am. Compl. at 4–5, 16.] *See Zebrowski v. Wells Fargo Bank, N.A.*, 657 F. Supp. 2d 511, 524–25 (D.N.J. 2009) (finding no favorable termination where homeowners resolved

foreclosure proceedings by paying the disputed amount). Because favorable termination is a necessary element, the Court need not determine whether Plaintiff sufficiently alleges the remaining elements. Accordingly, Count II will be dismissed without prejudice.

**3. Malicious Abuse of Process**

Turning to Plaintiff's abuse of process claim, Plaintiff must establish two elements: "(1) [an] ulterior motive; and (2) [a] 'further act after the issuance of process representing the perversion of the legitimate use of the process.'" *Paragon Advanced Techs., Inc. v. Eckels*, 2025 WL 847927, at *3 (D.N.J. Mar. 18, 2025) (citing *Zebrowski*, 657 F. Supp. 2d at 517).

Plaintiff alleges that Defendants supplied a fabricated lease to obtain a warrant of removal after commencing the eviction action. [Am. Compl. at 17.] Although this identifies a subsequent act, Plaintiff must also plausibly allege that the act constituted a perversion of process, rather than merely improper conduct in pursuing the action's ordinary relief. *Baglini v. Lauletta*, 768 A.2d 825, 831 (N.J. App. Div. 2001) (defining malicious abuse of process as "misapplying process justified in itself for an end other than that which it was designed to accomplish."). The alleged application sought Plaintiff's removal, the ordinary object of eviction proceedings. Plaintiff's allegations of retaliation and an intent to cause homelessness identify "[b]ad motives or malicious intent leading to the institution of a civil action[,]" which alone is "insufficient to support a cause of action for malicious abuse of process." *Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1037 (3d Cir. 1988) (citing *Fielder Agency v. Eldan Const. Corp.*,

377 A.2d 1220, 1222 (N.J. Super. L. Div. 1977)). Accordingly, Count III will be dismissed without prejudice.[1]

**C. Plaintiff's Motion for Recusal**

Plaintiff renews his request for this Court's recusal from this case. [Pl.'s Letter.] Plaintiff argues "that it appears that [the undersigned] is showing bias in the favor of defendant Catholic Charities and therefor[e] assisting all [t]he defendants in this matter." [*Id.*]

Under 28 U.S.C. § 455(a), "any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(b) provides that such judge "shall also disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" 28 U.S.C. § 455(b)(1). Recusal is required "if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge" of his or her interest or bias in a case. *Liljeberg v. Health Services Acq. Corp.,* 486 U.S. 847, 860–61 (1988); *In re Kensington Intern. Ltd.,* 368 F.3d 289, 301 (3d Cir. 2004). In making this determination, courts must consider how the facts would appear to a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *United States v. Jordan,* 49 F.3d 152, 156 (5th Cir. 1995). "A recusal motion must be based on objective facts, not mere possibilities and

[1] If this Court has misconstrued Plaintiff's claims, Plaintiff may seek reconsideration under Federal Rule of Civil Procedure 59(e) and Local Rule 7.1(i).

unsubstantiated allegations." *United States v. Jacobs*, 311 F. App'x 535, 537 (3d Cir. 2008) (cleaned up).

"[M]any courts have held that a judge's religious affiliation is not sufficient to warrant recusal under § 455(a)." *Petruska v. Gannon Univ.*, 2007 WL 3072237, at *2 (W.D. Pa. Oct. 19, 2007) (denying motion to recuse based on judge's Catholic affiliation where bishop of the judge's denomination was a party); *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F. 3d 649, 660 (10th Cir. 2002) ("[C]ourts have consistently held that membership in a church does not create sufficient appearance of bias to require recusal.").

Plaintiff has only identified "mere possibilities and unsubstantiated allegations" to support his accusations of bias, rather than "objective facts" as required. *See Jacobs*, 311 F. App'x at 537; *see also In re Piskanin*, 407 F. App'x 607, 607–08 (3d Cir. 2011) (unsupported allegations of the judge's political bias against plaintiff did not warrant disqualification); *In re Huertas*, 274 F. App'x 118, 121–22 (3d Cir. 2008) (unsupported allegations of racial bias and speculative accusations of affiliation with defendant did not support judge's recusal). Moreover, the undersigned's religious affiliation is not alone sufficient to warrant recusal. The record simply does not support a finding of an extrajudicial factor causing impartiality or any degree of favoritism or antagonism on the part of this Court, so as to make fair judgment in this proceeding unlikely, let alone impossible. *See Liteky v. United States*, 510 U.S. 540, 555 (1994). To the contrary, this Court's careful parsing of Plaintiff's claims and this Court's guidance provided herein have given Plaintiff a full and fair opportunity to litigate his claims. *See Fontanez*

*v. Lopez*, 2012 WL 693786, at *4 (D.N.J. Mar. 1, 2012). Accordingly, the renewed motion for recusal will be denied.

## IV. CONCLUSION

For the reasons stated herein, the Court will permit the complaint to proceed, in part, and dismiss the complaint in part. Plaintiff's motion for recusal is denied. An appropriate Order shall issue on this date.

Dated: November 3, 2026

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge